Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/12/2022 09:08 AM CDT

Saied Badawi, appellant, v. John Albin,
commissioner of the Nebraska
Department of Labor
et al., appellees.

___ N.W.2d ___

Filed May 20, 2022.    No. S-21-650.

1. **Employment Security: Judgments: Appeal and Error.** In an appeal from the appeal tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Nebraska Court of Appeals or the Nebraska Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

3. ____: ____. An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

4. **Employment Security: Proof.** In a disputed claim for unemployment benefits, the employer bears the burden of proving an individual is disqualified from receiving benefits because he or she was discharged for misconduct under Neb. Rev. Stat. § 48-628.10 (Reissue 2021).

5. **Employment Security.** Under Neb. Rev. Stat. § 48-628.10 (Reissue 2021), an employee may be partially or totally disqualified from receiving benefits if he or she is found to have been discharged for misconduct connected with his or her work.

6. **Employment Security: Words and Phrases.** "Misconduct," for purposes of Neb. Rev. Stat. § 48-628.10 (Reissue 2021), includes behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Reversed and remanded with directions.

Zachary W. Anderson, of Legal Aid of Nebraska, for appellant.

Elizabeth Cano and Katie Thurber, of Nebraska Department of Labor, for appellee John Albin.

Ruth A. Horvatich, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee JBS Swift Beef.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

This is an appeal under the Administrative Procedure Act (APA).[1] Saied Badawi applied for unemployment benefits after his employment at JBS Swift Beef (JBS) ended. Nebraska's Department of Labor determined Badawi was disqualified from receiving benefits for 14 weeks because he was discharged for misconduct.[2] The district court for Douglas County affirmed, and Badawi appeals. We reverse, and remand with directions.

---

[1] See Neb. Rev. Stat. §§ 84-901 to 84-920 and 84-933 to 84-948 (Reissue 2014 & Cum. Supp. 2020).

[2] See Neb. Rev. Stat. § 48-628.10 (Reissue 2021).

## I. BACKGROUND

Badawi worked for JBS from January 7, 2019, to May 19, 2020. After the employment ended, he sought unemployment insurance benefits from the Department of Labor. On July 23, the Department of Labor issued a "Disqualifying Separation Determination" which found that Badawi left work voluntarily without good cause and thus was disqualified from receiving unemployment benefits until he met certain statutory requalification requirements.[3]

### 1. Nebraska Appeal Tribunal

Badawi appealed the determination to the Nebraska Appeal Tribunal, arguing that he did not voluntarily leave his employment. A telephonic hearing occurred on March 15, 2021. Pursuant to a notice issued by the tribunal, the issues to be addressed in the appeal were (1) whether Badawi voluntarily left his employment without good cause and (2) whether he was discharged for misconduct connected with his work.

JBS did not appear for the hearing, but Badawi appeared with counsel. The hearing officer took "official notice" of the relevant Nebraska statutes and regulations, but no exhibits were offered. Badawi was the only witness, and he testified through an Arabic interpreter. As will be apparent from our quotations of Badawi's testimony below, a fairly significant portion of his hearing testimony was deemed "indiscernible" by the official court reporter who prepared and certified the bill of exceptions.

The bill of exceptions for the hearing is only 27 pages long, but contains 92 instances where the testimony was "indiscernible." It is unclear whether the indiscernible portions were due to a poor telephone connection, equipment failure, poor articulation by the hearing participants, or some combination thereof. The frequency of "indiscernibles" during critical portions of Badawi's testimony not only frustrates appellate

---

[3] See Neb. Rev. Stat. § 48-628.12 (Reissue 2021).

review, but it also impacts the competency and sufficiency of the evidence. And although no party challenges the sufficiency of the official record prepared by the agency in this case, we remind district courts that if the interests of justice would be served by resolution of any issue not raised before the agency, the APA authorizes the court to remand the cause to the agency for further proceedings.[4] The "indiscernibles" in this record may not have been so pervasive that they necessitated a remand to address the deficiencies, but it would be difficult to find an abuse of discretion if the district court had chosen to do so.

### (a) Evidence of Badawi's Job Duties at JBS

Badawi testified that when he first started at JBS, his job was to "euthanize (indiscernible) meat." Approximately 2 months later, he moved to a job which involved using a knife where he "just (indiscernible) slice the skin from the top to the bottom of the cow, in the middle." Apparently, he was then moved to a different job, because he testified, "That's what I used to do. And then, my position was changed, but I don't know the name (indiscernible)." He also testified, "I described to you what I was doing (indiscernible), but I (indiscernible) cutting in the middle and then, the second was (indiscernible) knife. I used [a] knife in all positions."

### (b) Evidence of Request to Perform Additional Job Duties

Sometime in May 2020, JBS asked Badawi to perform both his job duties and the job duties of another employee who was out sick with COVID-19. Badawi refused to perform both jobs. Badawi admitted that JBS had an employment policy related to transferring job assignments, and he testified that under that policy:

I can be transferred any time from one position to another. What I signed is that, if there is — for any reason that

---

[4] See § 84-917(5)(b)(i).

they — a position is (indiscernible) because they lost one employee and they are waiting to fill that position, I can be asked to go and help out temporary — to go and help out until that position is filled, but I will return to my permanent position. But this was not the case. It was like I'm asked to do two jobs, to work in this position and to go and work in other position. If I was informed that it was just something temporary, that I would have done.

Regarding the additional job duties Badawi was asked to perform, he testified:

The other person — I mean, the position that was second — that individual was doing that job, but (indiscernible) coronavirus positive, so that's why I was asked to go and fill that position (indiscernible). I couldn't do two jobs at the same time, so (indiscernible). It's a hard job. It's not something that I can combine with something else.

Badawi also testified: "But I did offer . . . instead of giving me two positions to do, [that] I just do one position. And, even if I take a [pay] cut . . . I was willing to do that, instead of doing two jobs at the same time."

Badawi's explanation for why he did not think he could perform both jobs at the same time was that he

watched [a training] video, and also I was shown the job by two people that were working that — to say (indiscernible) position here, using their knife. The person in front has a different position. The person behind me has a different position and is not supposed to do the job of the person in front of you. (Indiscernible) to do the job of the person behind you.

Badawi testified that he met with his manager and said "this is a two-job — a two-employee job that they were asking me to do. It's too much for me." He also testified that it was "impossible" for him to do "a job for two people." Badawi testified that after he was discharged by JBS, he contacted former colleagues and learned that the "two jobs that I was offered was filled with two employees."

Badawi testified that each time he refused to perform both jobs, JBS sent him home for a week. When he returned after the second suspension, security advised him he was not allowed to enter the premises. He testified he was making $18.55 per hour at the end of his employment and he consistently worked 38 to 40 hours per week.

#### (c) Decision of Appeal Tribunal

The appeal tribunal issued its decision on March 30, 2021. It found that Badawi did not voluntarily leave his employment without good cause and thus was not disqualified from receiving unemployment benefits on that basis. But it found he was disqualified from receiving unemployment benefits because he was discharged for misconduct. The tribunal found that Badawi committed misconduct because he "refused to work two positions," and it found that Badawi was "aware that he could be asked to fill in for another position according to the [JBS] policy." The tribunal also found that Badawi had not shown that working the two positions would amount to a material change in his hours or wages, "and could only describe the additional duties as 'hard.'" Based on these findings, the tribunal imposed a 14-week benefit disqualification upon Badawi.[5]

### 2. APA Appeal

Badawi challenged the tribunal's decision in an APA appeal in the district court for Douglas County. That court conducted a de novo review of the record and affirmed the tribunal's decision. The district court found that Badawi was "asked to do additional work of another employee because the employee was not at work after having contracted coronavirus" and that Badawi declined because "he thought he could not perform his work and the additional work of the sick employee." On those facts, the court determined "Badawi

---

[5] See § 48-628.10.

refused to perform work that was assigned to him by his employer." The court found "unpersuasive" Badawi's argument that "he was asked to perform two jobs that would be impossible to do."

Badawi filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENT OF ERROR

Badawi assigns, restated, that the district court erred in affirming the tribunal's finding that he was discharged for misconduct.

## III. STANDARD OF REVIEW

[1] In an appeal from the appeal tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Nebraska Court of Appeals or the Nebraska Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6]

[2] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[7]

[3] An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[8]

---

[6] *Lang v. Howard County*, 287 Neb. 66, 840 N.W.2d 876 (2013).

[7] *Moore v. Nebraska Acct. & Disclosure Comm.*, 310 Neb. 302, 965 N.W.2d 564 (2021).

[8] *Id*.

## IV. ANALYSIS

In Nebraska, unemployment benefits are governed by the Employment Security Law.[9] A variety of conditions can disqualify an otherwise eligible individual from receiving unemployment benefits.[10] As relevant here, § 48-628.10 provides that individuals are disqualified from receiving benefits "for the week in which [they have] been discharged for misconduct connected with [the] work, if so found by the [C]ommissioner [of Labor], and for the fourteen weeks immediately thereafter." A different disqualification condition was also addressed by the appeal tribunal, but found to be inapplicable.[11] As such, the sole disqualification issue presented to the district court was whether Badawi was discharged for misconduct under § 48-628.10.

Badawi argues the district court erred in finding that he was discharged for misconduct. First, he argues that because JBS failed to appear for the hearing before the tribunal, it presented no evidence and could not possibly have met its burden of proving misconduct. Alternatively, he argues the evidence is insufficient to show that his refusal to perform two jobs amounted to misconduct. We consider each argument in turn, but first, we clarify which party bears the burden of proving misconduct in a disputed claim for unemployment benefits.

### 1. Burden of Proof

We have not yet directly addressed which party bears the burden of proving that an employee was discharged for misconduct. In two cases, however, we implied the burden rests with the employer. In *NEBCO, Inc. v. Murphy*,[12]

---

[9] See Neb. Rev. Stat. §§ 48-601 to 48-683 (Reissue 2021).

[10] See §§ 48-628 through 48-628.12.

[11] See § 48-628.12 (individuals are disqualified from receiving benefits "[f]or the week in which [they] left work voluntarily without good cause, if so found by the [C]ommissioner [of Labor] and for the thirteen weeks immediately thereafter").

[12] *NEBCO, Inc. v. Murphy*, 280 Neb. 145, 152, 784 N.W.2d 447, 453 (2010).

a heading in the opinion stated the district court "Did Not Err by Concluding [the Employer] Failed to Show [the Employee] Employment Was Terminated for 'Misconduct.'" And in *Great Plains Container Co. v. Hiatt*,[13] we rejected the employer's argument that the district court erred "in requiring the company to establish 'gross' misconduct where only ordinary misconduct" was alleged.

The Nebraska Appeal Tribunal Precedent Manual, adopted by the Department of Labor pursuant to duly adopted regulations,[14] cites our *Great Plains Container Co.* decision as authority for the proposition that the employer bears the burden to establish that the claimant was discharged for misconduct in connection with the work.[15] And in its resolution of the instant cause, the appeal tribunal expressly stated that JBS had the burden to prove Badawi was discharged for misconduct.

[4] In their appellate briefing, Badawi and JBS, as well as the Department of Labor and the Commissioner of Labor (collectively the Department), all agree that JBS had the burden to prove Badawi was discharged for misconduct. We likewise agree, and we now expressly hold what our prior cases have implied: In a disputed claim for unemployment benefits, the employer bears the burden of proving an individual is disqualified from receiving benefits because he or she was discharged for misconduct under § 48-628.10.

## 2. JBS Not Required to Appear or Present Evidence to Tribunal

On appeal, Badawi argues that JBS necessarily failed to meet its burden to show he was discharged for misconduct because it did not appear and present evidence at the

---

[13] *Great Plains Container Co. v. Hiatt*, 225 Neb. 558, 559, 407 N.W.2d 166, 168 (1987).

[14] See 224 Neb. Admin. Code, ch. 1, § 019 (2014).

[15] Nebraska Appeal Tribunal Precedent Manual, ch. 2, § (00)15, http://www.dol.nebraska.gov/Appeals/PrecedentManualChapter/2), citing district court cases (last visited May 14, 2022).

hearing before the appeal tribunal. In making this argument, Badawi likens the situation to one in which "a prosecutor [does] not appear at trial."[16] But the procedure followed in hearings before the appeal tribunal is markedly different from that followed in a criminal case, or even a civil case, in a judicial forum. To address Badawi's challenges to the procedure followed by the tribunal, we turn first to the governing regulations.

According to the Employment Security Law:

> The presentation of disputed [unemployment] claims and the conduct of hearings and appeals shall be in accordance with the rules and regulations adopted and promulgated by the [C]ommissioner [of Labor] for determining the rights of the parties, whether or not such rules and regulations conform to common-law or statutory rules of evidence and other technical rules of procedure.[17]

Pursuant to this statutory mandate, the Department of Labor has adopted and duly filed regulations with the Secretary of State which are published in title 224 of the Nebraska Administrative Code.

The procedure governing appeals from disputed unemployment benefit claims is addressed in title 224.[18] It is designed to be informal: "[b]ecause the overwhelming number of these hearings involve unrepresented, unemployed parties who cannot afford legal counsel, these rules do not incorporate the more formalized rules of procedure for [other] administrative hearings . . . ."[19]

Instead, another section of title 224 provides that hearings on disputed unemployment benefit claims are to be held before an appeal tribunal consisting of a single hearing officer.[20]

---

[16] Brief for appellant at 12.

[17] § 48-635.

[18] See 224 Neb. Admin Code, ch. 1, § 001.

[19] Id.

[20] Id., § 002.

All such hearings are to be conducted by telephone conference call unless the tribunal, in its discretion, decides to conduct the hearing in person.[21] The regulations also govern the order of presenting evidence and the consequences of failing to appear at the hearing:

> The appealing party shall present its evidence first as to why it believes the determination appealed from was incorrect and provide any legal authority for the relief requested by the appealing party. If an appealing party fails to appear for the scheduled hearing . . . the Appeal Tribunal may dismiss the appeal for want of prosecution. If any of the responding parties fails to appear, the Appeal Tribunal will proceed with the hearing and render a decision based on evidence received from the appealing party.[22]

The role of the hearing officer is also governed by regulation: "The hearing officer shall function as an impartial fact finder and must attempt to obtain the reasonably available, competent evidence necessary to resolve the issues of the case, but shall not act as an advocate for any party."[23] In reaching an "independent conclusion regarding the facts of any case," the hearing officer must follow "Nebraska Statutes, the decisions of Courts of superior jurisdictions, previous Appeal Tribunal decisions, unless specifically overruled, as well as applicable Department rules and regulations and Unemployment Insurance Programs Letters published by the United States Department of Labor in the Federal Register . . . ."[24] Decisions designated as "precedential decisions by the Commissioner of Labor . . . may be published in a case digest or precedent manual."[25]

---

[21] *Id.*, § 012.

[22] *Id.*, § 014.

[23] *Id.*, § 015H.

[24] *Id.*, § 016.

[25] *Id.*, § 019C.

This overview of the pertinent regulations demonstrates that Badawi's procedural complaints are unfounded. Because JBS was the respondent rather than the appealing party, it was not required to appear or present evidence at the hearing before the appeal tribunal.[26] Instead, when a respondent fails to appear for a scheduled hearing, the regulations require the tribunal to "proceed with the hearing and render a decision based on evidence received from the appealing party."[27]

As such, even though JBS had the burden to prove that Badawi was discharged for misconduct, Badawi is simply incorrect when he argues that in hearings before the tribunal "parties must present their own evidence to meet their burden of proof."[28] Instead, the hearing officer was not only permitted to render a decision based on the evidence adduced by Badawi, but also had an obligation to "attempt to obtain the reasonably available, competent evidence necessary to resolve the issues" without acting as an advocate for either party.[29] The hearing officer did so by questioning Badawi under oath, after which Badawi's counsel conducted a direct examination. The record shows that the hearing officer followed the regulatory procedure, and Badawi's arguments to the contrary are without merit.

### 3. Evidence Insufficient to Show Discharge for Misconduct

Next, we consider Badawi's argument that the evidence adduced was insufficient to support the district court's determination that he was discharged for misconduct. Before addressing the sufficiency of the evidence, we review the legal standard for misconduct.

---

[26] *Id*., § 014.

[27] *Id.*

[28] Brief for appellant at 12.

[29] 224 Neb. Admin. Code, ch. 1, § 015H.

[5] Under § 48-628.10, an employee may be partially or totally disqualified from receiving benefits if he or she is found to have been discharged for misconduct connected with his or her work.[30] A partial disqualification is effective for the week of the discharge "and for the fourteen weeks immediately thereafter."[31] But an individual may be totally disqualified if the "misconduct was gross, flagrant, and willful, or was unlawful."[32] We have described this statutory scheme as imposing partial disqualification when discharge was for "general misconduct," and imposing total disqualification when discharge was for "gross misconduct."[33] Here, both the district court and the appeal tribunal found that Badawi was partially disqualified, so we confine our analysis to general misconduct.

[6] "Misconduct" is not defined in § 48-628.10, but our cases have long defined it to include behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.[34]

In this case, the district court performed a de novo review of the record and found that "Badawi was discharged from his employment for misconduct and ineligible to receive

---

[30] See *NEBCO, Inc., supra* note 12; *Douglas Cty. Sch. Dist. 001 v. Dutcher*, 254 Neb. 317, 576 N.W.2d 469 (1998).

[31] § 48-628.10(1).

[32] § 48-628.10(3).

[33] See *Douglas Cty. Sch. Dist. 001, supra* note 30, 254 Neb. at 322, 576 N.W.2d at 472.

[34] E.g., *Meyers v. Nebraska State Penitentiary*, 280 Neb. 958, 791 N.W.2d 607 (2010); *Douglas Cty. Sch. Dist. 001, supra* note 30; *Great Plains Container Co., supra* note 13.

unemployment benefits [because he] refused to perform work that was assigned to him by his employer . . . ." Additionally, the court found that Badawi "thought he could not perform his work and the additional work of the sick employee" but the court rejected as "unpersuasive" Badawi's argument that "he was asked to perform two jobs that would be impossible to do." Our standard of review for errors appearing on the record requires us to consider whether the district court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[35]

On appeal, all parties agree that Badawi was discharged because he refused to perform additional work assigned to him. They also generally agree that JBS had a written rule or policy regarding accepting temporary work reassignments and that Badawi was aware of such policy. To the extent the parties argue that Badawi committed misconduct by violating that policy, those arguments are not supported by competent evidence and must be rejected. The policy itself was not offered into evidence at the hearing before the tribunal. We therefore revisit Badawi's testimony regarding the policy, as it is the only competent evidence in our record on that issue:

I can be transferred any time from one position to another. What I signed is that, if there is — for any reason that they — a position is (indiscernible) because they lost one employee and they are waiting to fill that position, I can be asked to go and help out temporary — to go and help out until that position is filled, but I will return to my permanent position. But this was not the case. It was like I'm asked to do two jobs, to work in this position and to go and work in other position. If I was informed that it was just something temporary, that I would have done.

In its appellate briefing, JBS describes the policy as "requiring employees to temporarily fill in for other employees if

---

[35] See *Lang, supra* note 6.

there is an employee absent for any reason."[36] And JBS contends Badawi was discharged for "insubordination"[37] because he "repeatedly refused to perform the work assigned to him" pursuant to this policy.[38] But in making this argument, JBS focuses only on the work assignment Badawi declined and ignores Badawi's uncontroverted testimony that he was asked to perform both the job duties of the absent employee and his existing job duties. Although the record supports the conclusion JBS' policy requires an employee to accept a temporary transfer from one position to another, we see no evidence to support JBS' contention that its policy requires an employee to perform the work of two employees at the same time. There is thus no competent evidence in the record that Badawi violated such a policy.

But JBS and the Department also generally argue that Badawi was discharged for misconduct because he refused an order to perform work assigned to him. As the Department frames it, "[w]hen asked to complete the tasks of both positions,"[39] Badawi refused and was therefore discharged. Although JBS generally argues that evidence an employee refused to perform a task ordered by the employer is sufficient to show misconduct, the Department asks us to adopt a rule that "an employee who is discharged for refusing an employer's order to complete a task is discharged for misconduct under § 48-628.10 *only if* the order refused was legitimate and reasonable."[40]

Our jurisprudence generally supports the rule urged by the Department. We have never held that an employer

[36] Brief for appellee JBS at 4.

[37] *Id*. at 16.

[38] *Id*. at 8.

[39] Brief for appellee Department at 7.

[40] *Id*. at 25 (emphasis in original).

meets its burden of proving misconduct simply by showing that an employee was discharged for violating a rule, policy, or order. Rather, our cases have generally required a showing that the rule, policy, or order at issue was reasonably designed to protect the employer's business relationship.[41] For instance, we have held an employer's policy of no drugs in the workplace is reasonably related to its interests in providing a safe workplace, and a violation of such rule is misconduct.[42] We have also held a policy requiring the employee to notify the employer of absences greater than 3 days is reasonably related to the employer's interests, and a violation of such is misconduct.[43]

But we have also held that a policy prohibiting the employee from exposing the employer to excessive garnishments is not reasonably related to the employer's business interests because it does not relate to the performance of the employee's work, and a violation of such a rule is not disqualifying misconduct.[44] And we have held that a rule that prohibited employees from associating with former employees was not reasonably related to the company's interests such that its violation amounted to misconduct for purposes of § 48-628.10.[45] We also observe that prior decisions of the appeal tribunal designated by the Department of Labor as precedential[46] have applied the rule that violation of an order to perform

---

[41] See, *Douglas Cty. Sch. Dist. 001, supra* note 30; *Dolan v. Svitak*, 247 Neb. 410, 527 N.W.2d 621 (1995); *Great Plains Container Co., supra* note 13; *Stuart v. Omaha Porkers*, 213 Neb. 838, 331 N.W.2d 544 (1983); *Snyder Industries, Inc. v. Otto*, 212 Neb. 40, 321 N.W.2d 77 (1982).

[42] See *Douglas Cty. Sch. Dist. 001, supra* note 30; *Dolan, supra* note 41.

[43] See *Stuart, supra* note 41.

[44] See *Great Plains Container Co., supra* note 13.

[45] See *Snyder Industries, Inc., supra* note 41.

[46] Nebraska Appeal Tribunal decisions, http://dol.nebraska.gov/Appeals/AppealsCases (last visited May 14, 2022).

work is misconduct only if the order was reasonable under all the circumstances.[47]

Based on this precedent, the Department argues the district court "applied the wrong legal standard"[48] here because it did not consider, in its de novo review, the reasonableness of JBS' order directing Badawi to perform both his existing job duties and the job duties of the absent employee. The Department argues that its "interest in this matter is in ensuring that the correct legal standard is applied and that Badawi is disqualified under § 48-628.10 *only if* a fact finder concludes that the order he refused to comply with was reasonable under the circumstances."[49] It therefore asks that we remand the matter to the district court with directions to conduct a de novo review using "the appropriate legal standard."[50]

Although we generally agree with the Department that to prove an employee committed misconduct by violating a rule, policy, or order, the employer must show such was reasonably designed to protect the employer's business relationship,[51] we think that remanding the cause to consider reasonableness would be futile on this record. Especially given all the "indiscernibles" which appear during Badawi's testimony, there is no competent evidence in this record regarding the

---

[47] See 224 Neb. Admin. Code ch. 1, § 019. See, also, *In re Marshall*, 12 Neb. App. Trib. 5030 (2012) (finding employer's job assignment was reasonable under circumstances because employee could perform it within time and work restrictions; *In re Svoboda*, 04 Neb. App. Trib. (2004) (finding job assignment reasonable under circumstances because employee knew requirements and had performed them on previous occasions); *In re Broomfield*, 91 Neb. App. Trib. 0707 (1991) (finding job assignment reasonable under circumstances because within job description).

[48] Brief for appellee Department at 27.

[49] *Id*. at 29 (emphasis in original).

[50] *Id.*

[51] See, *Douglas Cty. Sch. Dist. 001, supra* note 30; *Dolan, supra* note 41; *Great Plains Container Co., supra* note 13; *Stuart, supra* note 41; *Snyder Industries, Inc., supra* note 41.

specific requirements of either of the two jobs Badawi was asked to perform.

At best, this record shows only that because of the COVID-19 pandemic, fewer employees were available to work at JBS. JBS thus ordered Badawi to perform both the job he was currently performing and a job that had been performed by another employee. Badawi refused the order to perform both jobs because he thought he was not physically capable of doing so. And the record shows that both before and after Badawi's discharge, the two jobs were performed by two individuals rather than one.

Badawi testified that both jobs involved the use of knives, and we can reasonably infer from that testimony that both jobs involved cutting meat. But neither Badawi's regular job duties nor the duties of the additional job he was asked to perform can be discerned from this record. And without competent evidence of what each job entailed, it is impossible to find it was reasonable for JBS to ask Badawi to perform both jobs.

On this record, there is no competent evidence to support the district court's finding that Badawi committed misconduct by refusing to perform both jobs. JBS therefore failed to meet its burden to prove Badawi was discharged for misconduct, and we must reverse.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause with directions to remand the cause to the appeal tribunal with directions to enter an award consistent with this opinion.

Reversed and remanded with directions.